Judge Nicholas
delivered the Opinion of the Court.
Upon an issue of no assets, to an action of debt against the heirs of Bowling, an agreed case was framed, shewing, in substance, that there w^s a prior suit against them, by another creditor, for an unliquidated balance *42 —the amount claimed being more than the whole a* mount of assets, if any ; and that, by the will of Bowling’s father, there was devised to him and his sister certain slaves, after the death .of their mother, who was devisee for life of the whole estate, with directions to pay debts, maintain and school the children; and that his interest in those slaves, the mother being still alive, is all the assets, if any, that have come to his heirs.— No administration had been granted upon the estate of Bowling ; and more than twelve months after his death had elapsed before the institution of this suit.
Opinion^jntigc'u court?6 CU"
The pendency no ba”to Treeovery against tor odieir^But the administrahT títh^suit? confess the acmountoftheassets, and then plead that juagment in bar of •the other action
Slaves — though they descend % pass as real estate, (by statute,) do not vestinthe heirs, without the as•sent ofthePe*“ sonal representative, in whose ^dsth^%a“® statute) assets, j^ndsonly.they can be readied by creditors. — • The property of heirs in slaves inherited, does not render them liable to judgment upon the obligation oftheancestor. When there is neither ex’ornor adm. the title to the slaves — like the title to the personal property ■ — rests in aheyance.The act art thovizing suits against heirs alone, after 12 months elapsed without the appointment of ex ecutor or administrator, -does not subject any propertyin their hands which was not so liable before the statute.
*42 Upon this agreed case, the court rendered an opinion, that Bowling took a vested remainder in the slaves, which became liable to his creditors, as assets in the hands of the defendants, as his heirs ; but that the institution of the prior suit gave the plaintiff therein, “a right to have his claim first satisfied,” and judgment was thereupon rendered for the debt, “to be levied of the estate of Bowling, which has or shall come to the hands of the defendants, his heirs.”
That part of the judgment which goes for present assets, is so palpable a non sequitur from the decision of the court, that we presume it must have been the result of inadvertence in entering it up.
We do not know the principle, upon which the court determined the defendants were exempt from a judgment for present assets, by reason, of the pendency of the prior suit. It is not even alleged in the pleadings, or the agreed case, that any part of the sum claimed in that suit is actually due ; and if it had been, still, the defendants could obtain such exemption in no other Vay than by confessing the first action, to an amount sufficient to cover the value of the assets. A creditor cannot be postponed in recovering his judgment against heirs, merely because another creditor has a prior suit against them, though the heirs may have the privilege, accorded to the personal representative, of confessing the action of either creditor, and then pleading his recovery in bar of the other.
There is no pretext for our determining, in this case, the questions that have been mooted in argument, and *43 wliich it appears to have been the principle design of the agreed case to present for adjudication ; that is, whether the devise to Bowling lapsed by reason of his death in the life time of iiis mother, or whether he took such an interest in the slaves as would descend to his heirs. In neither alternative, would a judgment against the defendants, as his heirs, be authorized on the idea of such interest being assets in their hands. ' For though our statute declares that slaves shall descend to heirs, yet, at the same time, it makes them assets m the hands of the personal representative, and it has uniformly been determined, that the heir acquires an inchoate property only, such as gives him no absolute legal ownership, without the assent of the personal representative. The legal title to slaves must, therefore, rest in abeyance, until the appointment of a personal, representative, in the same way as does the title to theise chattels that are strictly and exclusively personal. The heirs can no more be sued on acco.unt of the one than the other, as assets in their hands. Though there had been no grant of administration on the estate of Bowling, at the institution of this suit, yet that is no reason why there may not be hereafter ; and whenever granted, whatever interest of his in the slaves, that either the heirs or personal representative could take, would immediately become the property of the latter, for the purposes of administration ; and the recovery in this suit could neither divest his right, or bar his recovery. The statute authorizing suit against heirs alone, where no administration has been taken for twelve months, creates no new liability against the heir, and makes no new subject of assets ; but merely enables the creditor, in a particular class of cases, to sue the heir alone, without joining the personal representative.
Former decis_ ions of this ct. (8 Mon. 124— 7 Mon. 421,) that there could be no judgment quando against heirs, questioned and overruled ; and now held, that — Though the right and title of the heir is cast upon him at once by the death of the ancestor, he may not acquire, or be able to obtain, the possession until long afterwards ; and is liable to the creditors of the ancestor so far only as estate has actually come to his possession. In the mean time, the creditor should have the right to establish his debt,by suit against the heir, and to have his judgment satisfied out of'any estate of the ancestor w-liich the heir may thereafter acquire possession oil Judgments against heirs, for assets quando, are therefore legitimate, necessary and proper.
So much of the judgment, therefore, as goes against present assets is erroneous, and so much as goes against 1 *44 assets in futuro is equally erroneous, provided it be true, as has been determined in the cases of Monroe vs. Wilson, 6 Mon. 124, and South vs. Snelling, 7 Mon. 421, that no judgment quando can be rendered against heirs. In the first of those cases, it is said, the court “ could not conceive, under what law, or according to what precedent,-any such judgment could “ be rendered — “for there cannot be a supposed case of assets descending to them from time to time. They (heirs) take at once on the death of the ancestor, or not at all.” In the other case, a decree against heirs for assets quando, is treated as something ludicrous, because it was providing “for a future supposed descent, an event which could never happen.” No authority is cited in support of these decisions, nor is any comment made upon the multiplied precedents in the English books, of judgments quando against heirs, or upon the unvarying current of authority in their favor. The only argument used is embraced in the above extracts from the opinions, which is, that there could be no such judgment, because assets do not descend from time to time to the heir, but descend at once on the death of the ancestor. This argument supposes that a judgment quando anticipates a future descent, which it does not. It anticipates the possibility of the acquisition of future assets, but not their descent. The administratrator and the heir both acquire all their title to the different portions of a decedent’s estate, by a single act or operation of the law. The grant of administration giving it’.in the one case, and the descent in the other. Though the administrator acquires his title to the whole personal estate at one and the same time, and it is not devolved upon him from time to time, yet the law does not render him liable for all that he has thus acquired title to, but only for so much thereof as he may have reduced to possession, sujpposing always, that though there may not be present assets, yet still they may accrue to him hereafter. So, also, though the title to the whole of the real estate descends to the heir at one and the same time, yet the law holds him liable for only so much as he has got into possession. It may well be, that in point of fact, he nei *45 ther has it in possession, nor has been able to reduce it to possession, when he is sued. The law, therefore, by the judgment quando, provides for the anticipated event of its being reduced into possession, when it will instantly become assets.
A single instance illustrates and proves such to be the law, as fully and satisfactorily as any number could. For if it can be shewn, that, in a single instance, such a judgment would be useful and necessary, it is plenary proof that the law allows it, and that the numerous precedents of such judgments, in the English books, are as well founded on principle as authority. Such instance is to be found in the familiar case of daily occurrence, where the title to reál estate descends to an heir, whilst in the adverse possession of another. Neither a right to enter land, nor a right of action for land, is assets, until brought into possession — Co. L. 374, b.; 6 Co. 58, b. — but of course becomes assets when brought into possession.
The descent of a reversion expectant on an estate tail, is also an instance in England. For though such reversionary interest is not considered assets during the continuance of the intermediate1 estate, because of the power of the tenant in tail to defeat the reversion, yet if the estate tail expires, the estate thereby vested in the heir as reversioner, immediatly becomes assets in his hands.
A still more familiar case, in England, is that of a reversion expectant, on an estate for life, which, though considered assets, yet the plaintiff there cannot have execution until it comes into possession ; and upon a plea shewing a reversion of that sort, with a nihil preter, such is the form of the judgment. 1 Roll. Abr. 888; Dyer, 373, b.; Com. Dig. Pleader 2 E. 3-4-5.
When a creditor sues an heir, to get at assets not sufficient to pay his whole debt, or even merely to establish his debt, before assets have come to hand, there is no reason why he should not be allowed the same judgment as against an administrator, for such assets as may thereafter come to hand. Without such judgment for future assets, he would be effectually barred from ever recovering them. In Mary Shipley’s case, 8 Co. 134, *46 where it was held that a judgment quando could be rendered against an executor upon a plea of no assets, an heir is treated as standing, in this particular, upon the same footing with an executor, and precedents of such judgments against an heir were cited to prove the propriety of allowing it in that case against an executor. In Noel vs. Nelson, as reported in 1 Sid. 448, heirs and executors are expressly stated to stand upon the precise same footing in this respect, and so they are treated by Coinyn in his digest. In Dorchester vs. Webb, Cro. Car. 372, the particular point ruled in Mary Shipley’s case was denied to be law, though it was admitted that, if the plea confessed some assets, the plaintiff might not only take his judgment for them, but for the residue of his debt, out of future assets. But in Noel vs. Nelson, (also reported 2 Saund. 226,) the authority of Mary Shipley’s case is reasserted, and such has continued to be the law and practice ever since. With us, such a judgment has long been allowed against an executor, even after a verdict for him upon a plea of no assets, and there is no sufficient reason why it should not be allowed against an heir also, under like circumstances. The creditor cannot well be presumed to know the state of the assets in the hands of the heir or executor, and he should not be prejudiced by bringing his suit to establish his debt against the decedent, before assets have come to hand, or after they have been paid away to other creditors. Whether the law, as it still is in England, that neither a reversion, nor a right of entry, or right of action for land, is present assets in the hands of an an heir, has undergone a change with us, by reason of our statutes subjecting land to sale under execution, whether in possession, reversion or remainder, and even in adversary possession, need not now be determined. For a judgment quando would still be proper, let that point be determined either way. The power of avoiding an estate, or taking advantage of a forfeiture of an estate granted upon condition, wr the right of acquiring an estate upon the performance of a condition, descending upon an heir, would neither of them be an estate in possession, reversion or remainder, neither would they *47 therefore be vendible under execution, or constitute present assets in the hands of an heir, though the estate so( acquired, would, when acquired, become assets.
The result is, that we deem a judgment quando against heirs as still legitimate, necessary and proper, and the judgment rendered here, would be affirmed, if it were strictly of that character. But as we understand it, it is a judgment for assets in presenil, as well as in futuro, and for that cause it must be be reversed, and the cause remanded, for a judgment to be rendered against such estate descended from Bowling as may hereafter come to the hands of the defendants.
Bowling’s heirs must recover the costs of both writs of error.