Judge Marshall
delivered the Opinion of the Court. The Chief Justice did not sit in this case.
This was a proceeding by the President and Directors of the Danville, Nicholasville and Lancaster Turnpike Road Company, instituted in the Garrard Circuit Court, for the purposes of appropriating to the use of said Company, for the objects contemplated by its charter, so much of the lands of George Rice, Joshua Burdett, John Byers and Asael Davis, lying within the county of Garrard, as was necessary for making the road.
The act of incorporation, sections fifteenth and sixteenth, authorizes ths directors, when they cannot acquire the lands necessary for the road by contract, to petition .the resident Judge of the circuit within which the lands on which it is proposed to construct the road may be situated, for the appointment of appraisers to assess the damages which the owners of such lands will severally sustain by reason of the appropriation thereof to the use of the corporation. The four succeeding sections prescribe the manner of proceeding, from the presentment of the petition until the report is returned and finally acted on by the Judge. The last of these sections (the twentieth) requires the appraisers to report to the Judge, under their hands and seals, within ten days from- the receipt of their commission, reciting the order of their appointment, and specifying the parcels of land &c. with all necessary certainty &c. And if the parties are dissatisfied, authorizes the Judge, on hearing them, to modify the assessment as shall appear just. By the twenty first section it is enacted, that, on payment of the damages thus assessed, together with the expenses of the assessment, as settled by the Judge, or *82 on depositing the amount for the use of the owners in such place as the Judge shall in writing direct, “the corporation shall immediately become entitled to the usé of the land,” &c/for the purposes aforesaid. And that the report, with the modification of the Judge, if there be any such modification, may be recorded in the same office, in the same manner, and with the same effect, as deeds are recorded, without other proof than the certificate of the Judge, that the report is genuine.
The present petition, addressed to the Judge of the Garrard Circuit Court, was filed in that Court, at its March term, 1836. On a summons returnable to a subsequent day of the term, the land owners appeared, and, •with their consent, five persons were named as appraisers, to go upon the lands through which the road was to pass, and assess against the company the probable damages which might be sustained by the defendants, respectively, in consequence of the construction of the road as proposed, being directed to consider the advantages or disadvantages attendant on the same, and to Teport to the 'Court at its .next term.
At the March term, 1837 — the case having in the mean time been regularly continued — the commissioners are stated to have filed their report herein. Which report, bearing date the 2nd of February, 1837, and signed by four of the appraisers or commissioners named in the order of March, 1836, recites that the undersigned being appointed at the June term of the Garrard Circuit Court, 1836, to view and assess the damages &e. met, in pursuance of the above recited order, about the •1 st of August last, and after being first sworn, &c. proceeded to view &c., “and reported that, we considered the said Davis, Byers, Rice and Burdett sustained no damage from the present location of the D. L. & N. Turnpike road; that although they might be' put to inconvenience, in re-setting old and making new fences, yet the advantages accruing to them from the location •of said T. P. road, would remunerate them for all expenses thereby incurred, and all inconveniences •thereby sustained;” that understanding that report to have been misplaced or lost, they therefore report, *83 upon application, that such was their report at the time referred to; and they still report that they' believe the parties above named sustain no damage from the prer sent location of the road &c.
The power conferred upon certain circuit judges, by the act incorporating the Danville, Nicho-lasville and Lancaster Turnpike road Company— to appoint appraisers to assess the value of land which may be ta ken for the road; the advantages & disadvantages of the road to the proprietors &c , to receive the report of the' commissioners, and, where either party is dissatisfied, to hear them,and judge — whether rno dify the assess ment as may appear to be just— is a judicial power; and the proceedings and decisions of the the power be exercised in court, in the country, or at his chambers--are subject to revision by the Court of Appeals — whenever an authentic record oí, the proceedings can be obtained; and, though the act seems to contemplate proceedings in the country only, they may, nevertheless, be had in a circuit court, where the record'may be made up in the usual mode-
To this report the owners of the land filed exceptions, which are copied into the record, and the record proceeds to state, that the Court being sufficiently advised of and concerning the same, “and being also satisfied, from examination of witnesses and otherwise, that the former report was regularly made out, but has been lost or mislaid — It is ordered that' said exceptions be overruled, and said report confirmed.”
For the reversal of this order, a writ of error is prosecuted by Rice and the other owners of the land mentioned in the petition and report; who, by the assignment of errors, bring in question every step taken in the proceeding, and every order and opinion of the Court.
It is objected, however, that there is no such judgment or order as will authorize a writ of error from this Court. This objeción, which forms a preliminary question, can only be sustained on the ground, .either that the order is not judicial in its character, or that it is not final.
The object of the statute, in requiring the proceeding to be had before a judge, under his authority and direction, and subject to his final inspection and modification, was to ensure its substantial conformity with the requisitions of the act itself, and its consequent sufficiency as a means of effectuating the object intended to be attained by it. From this manifest purpose of the statute, as well as from the express nature of the agency committed to the- Judge, it must be implied that it was intended that he should not only follow the provisions of the statute himself, but that he should compare the proceedings brought before him, with its requisitions— especially when either party objected to them — and that his action on the subject should be determined by his *84 sense of their conformity or non-conformity. But this power ofi comparing the proceeding with the law by which it is regulated, and controlling it according to his opinion of the law,, is especially judicial in its nature,, and that it was so understood and intended by the Legislature, cannot be doubted. The fact that the proceeding is one very seriously affecting important and valuable rights of individuals, that it is evidently a substitute for the ancient proceeding by writ of ad quod damnum, and that the agency of a high judicial officer, learned in the law, is substituted for that of the County Court, which, as exercised in supervising and controlling the proceedings on the writ of ad quod damnum, has always been held to be judicial, all tend to show that the agency now vested in the Judge, is, and was understood to be, judicial. '
All judicial pro Ceedings of inferior courts , it seems, are subject to the revision of the Court of Appeals, unless where it is otherwise provi ded by law.
The substance and object of the proceeding, the agency by which it is superintended and controlled, and its effects upon the rights and interest of individuals being essentially the same as in case of a proceeding by writ of ad quod damnum, we refer to the practice of this Court in revising and reversing the orders of the County Court when they have acted finally on writs of ad quod damnum returned to them, not only as proving that the analagous action of the judge upon exceptions taken to a report of appraisers under this statute, is judicial, but as tending also to show that, when final, it is subject to the revisory power of this Court. The statute now under consideration provides, it is true, for the exercise of the power it confers, not in Court, but in the country or in the chambers of the judge. Nevertheless the proceeding provided for is, in form, a judicial proceeding between parties for the establishment or .ascertainment of a right, and though not directed to be carried on in a Court eo nomine, it is open and public, and the investiture of a Judge with this jurisdiction, though to be exercised independently of the Circuit Court, is virtually the erection of a new judicial tribunal, whose final judgments and orders, of a judicial character, must, like those of other inferior tribunals of justice, be subject to the appellate jurisdiction of this *85 Court, unless exempted from it by the provisions of this or other more general laws of the land. There is, however, no such restriction either in this or any other statute applicable to the subject. And although the statute makes no provision for the keeping of a record by the judge when he acts out of Court, nor for bringing the case before this Court, yet as the appellate power of this Court, except so far as it is restricted by constitutional legislation, either express or implied, is co-extensive with the judicial power conferred upon the inferior judicial tribunals of the State, we do not feel at liberty to imply an intentional exclusion of this power, or an intentional restriction upon the common right of resorting to some appellate power, from the mere failure of the Legislature to make express provision for their exercise in relation to this proceeding. We have no doubt, therefore, of the revisory power of this Court, whenever a properly authenticated record of the proceeding can be supplied. In this particular case, the judge having exercised the powers vested in him by the statute in the Circuit Court, and under the usual form of proceedings in that Court, (as he undoubtedly might do with the same effect as if he had acted out of Court,) and having thereby furnished a record of the proceeding, authenticated in the usual way, and accessible by the usual means, has thus obviated all difficulty as to the manner of subjecting the case to the revisory power of this Court. And if the order complained of be final in its character and effect, we are satisfied that the party injured by it has the right of bringing it here for revision by writ of error.
An order oyerrnl ing exceptions to a report of commissioners,under the turnpike act, {supra) and con firming the report, is final, so that a writ of error will lie upon it.
We have as little doubt that the order overruling the exceptions and confirming the report was final. By that order the proceeding, as between these parties, was at an end. The object of the petition was fully attained. The rights of the petitioners on the one side, and of the land owners on the other, were ascertained and fixed. Nothing more remained to be done or determined by the judge as between them. And the company, by the termination of the proceeding and the law applicable to it, became entitled, if the proceeding were not *86 VÓid, to take the land, merely by paying the expenses of the assessment: the settlement of which, though to be made by the Judge, forms no part of the case between the company and the Iaiid owners.
In a proceeding under the act incorporating the Co. — to have the damages assessed which may be sus tained by owners ofland,by its being taken for the uses of the Co.—
The land to be ap propriated must be identified with as much certainty as is required in a conveyance. The report must conform to the act and the order appointing the commissioners.
A certificate of the commissioners that they had formerly made a ■ report, which is lost — stating its contents, & that such was and is their report, is insufficient. If a report is lost before it is returned to the judge, it “can only be supplied by a new one in due form, or by a proceeding de novo.
Whenever the property of an in dividual is about to be appropriated to any public use, he is entitled to its actual value in money. The advantages disadvantages that may be taken into consideration in assessing the damages which a citizen may sustain by his property f01'a Pub°ic Fa-ffiv^conveni? ence or which hemayde rive on the one hand»an.d the’con ges on the other: %se “N be se^ other. But for íaken° the const! tution guaranties «on! wSmust be ascertained , ofañ^lpec'-ulative^advanta-lowfromtheuse t0 be made of
*86 Having disposed of these preliminary points, we shall state very briefly our opinion as to such, of the exceptions taken to the report, as seem to require notice.
First. There is not in any part of the proceeding, such a description of the land intended to be appropriated for the road, as the statute seems to required— There should be the same certainty that is required in a conveyance of land.
Second. Considering the written statement which was acted on by the judge, as the report of the appraisers, it varies, in several particulars, from the requisitions of the statute. It does not certainly recite or refer to the order under which the assessment was made, nor was it made within the time prescribed.,
Third. But that statement is not the report of the appraisers which the statute intends, but merely a certificate of the appraisers, without oath and without seal, purporting to contain the substance of the report said to have been made out. The loss of the report before it was returned to the judge could only have been supplied by a new ■one, made out in proper form, or by a new appointment of appraisers to go upon the land, and make a new assessment;, and if there had be'en no other objection to the proceeding, it was certainly erroneous to confirm this certificate as a report under the law.
Fourth. A fourth objection is, in substance, that, in the assessment, as stated by the appraisers, they have allowed nothing to the proprietors for the land which is to be taken for the road; and that if this assessment is a compliance with the law, and is to have effect as such, the land over which the road is to pass may be taken without making compensation to the owners.
To this objection two answers are made: (1) that as the right of the company to appropriate the land is perfected only by paying the damages assessed and the expenses of the assessment, the right can never accrue where no damages are assessed; because, in that case, *87 none can be paid.. If this were so, it would have been a reason which, if others were wanting, would have been of itself sufficient for setting aside the report as a futile proceeding. But we do not concur in this view of the statute. Its obvious intention was to provide a mode by which the company might, in all cases, be enabled to appropriate the land necessary for the road, without or against the consent of the owner; and the . . -i ... ,. payment oí the damages is only an indispensable condition of the right, when there are damages to be paid. (2) It is further said, m answer to the objection under consideration, that the report and assessment, made in the manner prescribed by law, shows that the land to be taken for the road is of no value, and that, there being nothing to prove the contrary, the owners have no right to complain that no damages have been allowed to them. But waiving all question as to the form of the proceeding, it appears from the language of the appraisers themselves, that they have not reported,- nor stated, the opinion that the land was of no value. And it is clear that, in assessing the damages, they have either wholly omitted to take the value of the land into the computation, or have combined it with other inconveniences or losses to be sustained in consequence of the construction of the road, and comparing the aggregate with their estimate of the advantages which will flow from the same cause, have come to the conclusion that these advantages will compensate the owners for all inconveniences and losses, including the loss of the land. But the constitution (art. 10 — sec. 12',) declares that no man’s property shall be taken or applied to public use, without just compensation previously made to him.— And according to the construction given to this pro- ■ vision in the case of Sutton’s Heirs vs. The City of Louisville, (5 Dana, 28,) to which we still adhere, the- compensation guarantied by it, cannot consist of the mere estimate by a jury, or by appraisers, of the prospective and speculative advantages which, in their opinion, will accrue to the owner from the proposed use of his land by the public, but must be a pecuniary compensation equivalent to the value of the land intended to be taken. *88 The speculative advantages expected to arise from the proposed appropriation of the land, might, as is said in the case above referred to, be set off against the consequential damage and inconvenience which the owner may sustain, but not against the value of the land itself. To that extent, at least, the owner is entitled, under all circumstances, to a specific compensation, without deduction or set-oil’. And the fact that the statutory proceeding is based upon the idea that some damages will always be assessed to the owner of the land, proves that the Legislature did not intend that this specific compensation should be swallowed up in conjectural estimates of the future advantages which he might derive from the construction of the road. What might or ought to have been done if the appraisers had reported expressly that the land proposed to be taken was of no value, need not be determined. They have not so reported; and there is not, either on the face of the report, or in contemplation of law, any presumption that such was the fact. But as they have failed to report the value of the land, the repoi't is upon its face illegal and unjust, and on that ground, had there been no other, the Judge should have rejected it, or should have modified the assessment by setting out the value of the land, as damages to be paid by the company, before they could appropriate it to their use.
Whenever the Facts on which an assessment under the turnpike act (supra) appear, cither by the report,or by proof, the judge should dispose of the matter, by modifying or confirming the report. Tho’the proceed ings may he void, as tiie confirmation of the report gave the Co. an apparent right to appropriate the land, the owners of it are entitled to a reversal.
And we áre of opinion, further, that whenever the facts on which the amount of the assessment should depend, are exhibited, either on the face of the report, as they should be, or by evidence given before the judge, he should, on objections made, either modify the assessment as may appear just, or confirm the report, and thus terminate the proceeding, if there be no other objection but to the amount of the assessment.
The order overruling the exceptions to the report, and confirming it, was therefore erroneous. And whether on account of the errors which have been noticed, or for any other cause, the proceeding might or might not be adjudged to be void, as the confirmation of it gave an apparent right to the company to appropriate the lands to the use of the road, without-compen- *89 sat ion, the owners must be considered as being prejudiced thereby, and are consequently entitled to a reversal. Wherefore, the said order is reversed and set aside, and the case is remanded, that the petitioners may, if they think proper, proceed de novo, under the statute, and in conformity with the principles of this opinion.