## Mitchell vs. Walker.

#### APPEAL FROM MADISON CIRCUIT.

Case 10.

ORD. PET.

1. A testator devised to his wife "all his land and mansion house;" afterwards he said, "if she should marry, I wish her to have all the above mentioned property, that is devised to her, except the land," of which I wish her to have only one third, including the mansion house: Held, that by the will the whole of the testator's land passed, as well that on which the mansion house was situated as another tract in the neighborhood, not improved.
2. Parol evidence cannot be adduced to explain a latent ambiguity in a will, or change the import of the words employed in a devise.
3. It may sometimes be admitted to give application to the words of a will, but not to change the import of a devise.

[The facts of the case appear in the opinion of the court.—REP.]

*S. Turner* for appellant—

Argued—1. That Stephen Walker, the testator, did not own the land in controversy, and consequently did not intend to devise it to his wife, and that it did not pass by his will. (*Noland vs. Johnson,* 5 *J. J. Marshall,* 351.)

2. It is well settled that a latent ambiguity as to the person who shall take under a will, or as to the property embraced by the devise, may be explained by extrinsic parol proof. In *Starkie's Ev.*, *vol.* 3, *page* 1020, it is said : "In the next case parol extrinsic evidence is admissible generally to give effect to a written instrument by applying it to its proper subject matter, and also for the purpose of removing presumptions arising from extrinsic facts which would otherwise obstruct such application."

It is always necessary, as a matter of extrinsic evidence, to apply the terms of a written instrument to a particular subject matter. A difficulty occurs in this case; although the terms of the instrument are sufficiently definite and distinct, the objects to which it is to be applied are not generally so certain, and when it is doubtful whether the description applies at all to the particular object pointed out by the evidence. The illustration most generally given of the operation of this rule is that of a description in a will of a devisee of an estate. Same author says : "So, if a person grant his manor of S. generally, and it appear that he has two manors of S.— South S. and North S.—parol evidence is admissible to show which was intended." So, if one have two manors of the same name, levy a fine of one without distinguishing which, parol evidence is admissible to show which was meant· In page 1024 of the same author, it is said : "As an ambiguity arising from too great a generality of description may be removed by oral evidence, which constrains and confines and applies that description to a single object, although on a mere comparison of the terms with several objects they may be equally applicable to more than one."

Philips, in his treatise on Evidence, 410 to 416, gives many examples where latent ambiguities have been explained by parol extrinsic evidence. (See *Tuder vs. Terrill*, 2 *Dana*, 47 ; 2 *Durnford & East.*, 209 *to* 218; *Doe vs. Wilkerson*, same case, is referred

to by *Jarman on Wills, page* 633, *side page* 747.) The true construction of the will on its face is, that the widow is to take for life the tract of land on which the mansion house stood, and in the event of her marriage she was to be narrowed down to one-third of the same tract.

The proof in this case, and which was mainly introduced by Mrs. Walker, and the legality of which was not controverted in the circuit court, is amply sufficient under the authorities cited to show that the testator did not know that he owned the land in controversy, and did not claim it, and therefore did not intend to dispose of it by his will, and hence that the devise of his lands and mansion house is to be construed as only embracing the tract on which his mansion house stood in Bush's claim. Believing the court will take this view of the subject, a brief notice only will be taken of the instructions given and refused by the circuit court.

The court erred in so qualifying the instruction of appellant as to tell the jury that the adverse possession should be *peaceable* and *uninterrupted.* This is not the law.

*Caperton and Runyan* for appellee—

The only question in this case is, whether the land in controversy passed by the will of Stephen Walker to his widow. Of that it is believed there can be no doubt. 1. Because it is clear from the will that the testator did not intend to die intestate as to any part of his estate. 2. The terms used in the devise in respect to the land is sufficiently broad to cover all his lands. It would be doing great injustice to the intelligence of the testator to suppose that he did not know that he was the owner of the land in contest.

Chief Justice MARSHALL delivered the opinion of the court:                    June 13.

The only real question in this case is, whether the title shown to have been in Stephen Walker at his death in 1817, and therefore subject to be disposed of

*(margin)* MITCHELL *vs.* WALKER.

by his will, was in fact so disposed of by the devise in which, giving to his wife various articles and species of property during her life, he uses, in the midst of the enumeration, the words "and also my land and mansion house." He says afterwards, "if she should marry, I wish her to have all the above mentioned property that is devised to her except the land, of which I wish her to have only one-third, including the mansion house." There is no further mention either of land or mansion house. But having made this devise to his wife, and other devises of slaves to his children by his first wife, the testator directs the remaining part of his estate, "to-wit: negroes, horses, cattle, sheep, and hogs, and every species of property not otherwise disposed of, to be sold and equally divided, together with $250 of bank stock, between his five last children;" and further, that all the property willed to his wife shall, at her death, descend to his five last children.

1. A testator devised to his wife "all his land and mansion house;" afterwards he said "if she should marry, I wish her to have all the above mentioned property, that is devised to her, except the land," of which I wish her to have only one third, including the mansion house :— Held, that by the will the whole of the testator's land passed, as well that on which the mansion house was situated as another tract in the neighborhood, not improved.

By this will the testator evidently disposes, and intends to dispose of, his whole estate, and every part of it. And upon the assumption that he owned two tracts of land in the same neighborhood, on one of which he lived and had his mansion house, while the other, of inferior quality, was two or three miles distant, and without inclosure or improvement, the question as between his widow and the younger children would be, whether this latter tract is included in the devise to the wife or in the residuary devise to the children. Upon the face of the will the direct devise of the testator's land to his wife is broad enough to include the whole, though in two tracts, and must be considered as including the whole, unless there be something in that or other clauses of the will to restrict it. The words "my land" in a gift mean, and are sufficient to include, all my land, and they do include all unless their then natural import is restricted by the context of words and circumstances. The additional words "and mansion house," though unnecessary, because the mansion house would have passed

without them, if entitled to any effect as tending to confine the gift to the tract on which the mansion house is situated, do but suggest the possibility that such may have been the intention, and if there were nothing else, could have scarcely any appreciable influence on the construction of the devise. But still confining our view to the face of the will, we find that in providing for the case of his widow's marriage, the testator directs that she shall have one-third of the land devised to her, including the mansion house. And as there is no ground to suppose that he intended, in that event, to reduce her interest to less than the law would give her if he made no will, but the presumption on the face of the will is that he did not so intend, then, as by this devise he supposed and intended that she should have one-third of all in case of marriage, it follows that in devising his land to her in the first instance, he intended and supposed that she would have the whole for life if she should not marry. If he did not intend his wife to have both tracts, the one on which the mansion house was not situated was certainly a part of the residuum; and if he did not suppose that all of his land had been devised to her, it is scarcely to be doubted that in specifying various items of that residuum he would not have failed to specify land, the most important species of property. And although land would pass under the general terms of the residuary clause, the omission to name land furnishes a strong presumption that there was no land undevised, or at least that he supposed there was none. And presuming, as we do, that the devise to the wife was in part intended to secure through her a benefit to the younger children, no motive is seen for excluding from the devise to her the unimproved tract, which might be brought into use.

In applying or giving effect to the words "my land," which refer to an extrinsic fact and object, it is of course necessary to resort to extrinsic facts and evidence to ascertain the locality and extent, that is,

2. Parol evidence cannot be adduced to explain a latent ambiguity in a will, or change

MITCHELL
vs.
WALKER.

the import of
the words em-
ployed in a de-
vise.

the identity of the land embraced within these descriptive terms. But when it is ascertained that the testator owned two tracts of land, both of which may be included in the description, this fact alone does not raise a question whether both tracts are included and pass by the devise. If both belong absolutely to the testator at the date of his will and at his death, both are certainly included in the general words "my land," and both necessarily pass by them, unless their comprehensive import is otherwise restricted. The question in such a case arises on the words of the will, to be elucidated by such extrinsic evidence or facts as by explaining the circumstances and subjects or objects to which they refer, and the testator's relation to them, may show the sense in which the words were used, and give them application. This is a question, however, arising upon the face or words of the will, and does not admit of extrinsic evidence, further than to illustrate the meaning and application of the words. If, with such aids, the question of intention be still doubtful, the case is one of latent ambiguity, for which there is no remedy by a resort to direct extrinsic evidence of actual intention. This is only admissible in case of a latent ambiguity, which arises, not when there are two or more objects of a like kind, which may both be included in the general terms used to describe what is given, but only when there are two or more objects, persons, or things, to each of which the terms of the gift, though not embracing all, are equally applicable. As if a man devise his manor of S., and it be made to appear that he has two manors of that name, it may be proved by his words and acts which of them he intended to give. But we know of no case in which it has been held that when the words used in describing the subject of the gift comprehended several objects, such evidence is admissible to exclude from the description one or more of them, on the ground that they, or some of them, were not actually intended to be included. In such a case the intention is to

be sought for in the words of the will, and although parol testimony may be sometimes resorted to for ascertaining the intended sense of the words, it cannot be resorted to for the purpose of ascertaining and giving effect to a secret intention inconsistent with the words themselves, or restrictive of their natural and legal import.

It is contended, however, that there are facts in this case which authorize the inference, consistent with the peculiar language of the devise to the wife, that the testator did not know that he owned any other land but the tract on which his mansion was situated.   And on the ground that if he did not know that the land in contest belonged to him, or that if he believed it did not belong to him he did not intend to devise it under the description of his (or my) land, it is contended that this inference, either to be assumed by the court or believed by the jury upon the evidence, is sufficient to control the extent of the devise, and to exclude from it the land in controversy.

The resort to this inference of ignorance, and to the principle of construction attempted to be based upon it, implies the concession that if the testator knew or supposed that he owned both tracts, the words of the devise, notwithstanding the unnecessary mention of the mansion house, would carry both. And this would be so because the additional words 'and mansion house' do not import any restriction or qualification of the previous gift, but a mere addition of that which was already included in other general words.   Such an unnecessary expression of what was comprehended in the previous words, may have arisen from ignorance or uncertainty of its being so included, or from a desire to emphasize by specification the gift of the mansion house, to which peculiar importance would reasonably be attached, or it may have been nothing more than an example of that superfluous repetition of the same thing in different words so frequent in ancient conveyances, for which

the best assignable motive is that of caution or the fear of omitting something intended to be included. If the intention had been to confine the gift to the home tract, the natural expression would have been, "my farm, or the land on which I live," by which it would have been distinguished from the other. And upon the supposition that he was not ignorant that both tracts were his, there is nothing in the language which is restrictive or exclusive. If he supposed himself to be the owner of but one tract, he must have known that it was sufficiently identified by the words "my land," and could not have used the words "and mansion house" for the purpose of identifying the tract given, by reference to that distinction. It is difficult, therefore, to conceive how these words, which, if he supposed he owned but one tract, could not have been used to discriminate between that and any other, and therefore could not have been used for identifying that tract, can be made the foundation, or brought in aid of the inference, that he was ignorant of his ownership of another tract. Nor do we admit that such ignorance, not deducible from the will itself, even if when conclusively established it might control the plain import and legal effect of a devise, which we are not prepared to admit nor called on to decide, can, when it is mere matter of inference from parol facts and testimony on which a jury might find one way or the other, be entitled or allowed to have any such important operation. A different conclusion would subject documentary titles, and especially those derived from wills, to all the uncertainty of parol evidence, and of imperfect recollection of a prejudiced understanding or distortion of facts, and of vague or partial inferences from them.

The authorities relied on do not, in our opinion, sustain the proposition in support of which they are adduced. In the case referred to of *Doe on demise of Vessey vs. Wilkinson, &c. 2 Term R.* 197, one of the judges, it is true, said in reference to the argument that the testatrix might not have been aware of her

MITCHELL
vs.
WALKER.

power to dispose of the estate in the contingency which had happened, and that if she had been, the whole will showed that she would have given it to A. W. said: "If she were not aware of her power, she did not intend to give that which she was not aware she could give, and then the law gives it to the heir, and we cannot take it from him." But the same judge had, upon a discussion of the will itself, without resorting to conjecture or hypothesis outside of it, established, as he thought, with absolute certainty, the conclusion that in the event which had happened the estate was not disposed of. The sentence above quoted, which contains all that he said, upon the supposition that the testatrix was ignorant of her power, is at most but an *abiter dictum*, and is not a judicial decision, even by one judge. In the same case the concurring judge, after expressing his opinion upon the will, said: "The truth is, that the testatrix either did not know or (did not) advert to the circumstance of the estate coming to her disposal by any other event than J. W.'s dying without issue in her lifetime;" which he says is plain, not by reason of any extrinsic fact, but by a certain limitation in the will itself. And the dissenting judge, (Buller,) in noticing the supposition of ignorance, thought it impossible to suppose that the testatrix did not know her power; that she had recited, *verbatim*, the settlement which gives her the fee, and it would be a great act of violence to say that although she has recited words which have a clear legal sense admitting of no doubt, she did not understand their meaning. "This, he said, is an argument which has no bounds, and would tend to subvert the plainest words."

In the case of *Noland vs. Johnson*, 5 *J. J. Marshall*, also relied on, where the question was whether a certain interest in land had passed under the residuary clause in the will of Nancy Turner, after showing that she certainly had the interest in question, and that she intended to dispose of all her estate by

the will, says in substance, that if it had been shown that she had renounced her interest in the land, or did not claim any, or believe that she had an interest in it, we should be of opinion that she did not intend to devise it. But after stating several facts from which the court admits it might not be unreasonable to infer that she did not intend to devise this interest, and most of these facts are drawn from the will itself, the whole tenor of which, it is said, evinces an effort to describe and specifically devise every article of property which the testatrix could recollect, but land was not mentioned; the question is concluded by the decisive declaration, "that these are insufficient to control the construction of the will; that it could not be safely inferred from them that Nancy Turner had no interest in the land, or that she did not know she had any, and did not intend to devise it; that the law gave her an interest, and her will has disposed of all the property which she had a right to devise."

The case of *Darnall, &c. vs. Adams, &c.* 13 *B. Mon.* 273, is, however, even more decisive, to the effect that the plain words of the will must have their legal effect and operation, though it be even certain that they will thereby pass property in which the testator believed his interest ceased with his own life, and of which he therefore supposed he had no power to dispose after his death; and although he expressed this belief while the will was being prepared, and declined making any disposition of the particular property. Notwithstanding all which, it was decided that the property (slaves that had been assigned to his wife as dower in the estate of her first husband) being his, and a part of his estate at his death, and until the death of his surviving wife, passed by the broad terms of the residuary devise in his will. And in the case of *Wheeler's heirs vs. Dunlap, &c.* 13 *B. Monroe*, 292, this court says, "it is well settled that extrinsic evidence to prove, not what a testator has expressed, but what he intended to express, is inadmissible." And after stating that sometimes extrinsic evidence

of a particular character may be admitted to enable the court, by placing itself in the situation of the testator, to ascertain his intention, and put a correct construction upon the language used by him, concludes that such evidence is inadmissible, even for this purpose, unless a sufficient indication of intention appears on the face of the will, to justify its application. "So that at last the interpretation of the will must depend upon and be governed by the sense in which the words contained in it were intended to be understood and applied by the testator, as indicated by the contents of the instrument itself."

The case of *Tudor vs. Terrell, &c.* 2 *Dana,* 47, to which we have been referred, may perhaps be regarded as an extreme case in applying the doctrine of the subject of latent ambiguities. In a devise to the testator's wife of fifteen named slaves, which was the total number owned by him, the name of Phillis was twice mention, while that of Phillip was omitted. There was but one Phillis. And it was decided that Phillip passed by this devise, though not named in it, nor comprehended in any general term which it contained. It was assumed from the facts which have been stated, and from other considerations drawn from the will itself, that the name Phillis was inserted once properly, and once by mistake instead of Phillip. Of which, as matter of fact, there can be scarcely a doubt. And the case seems, upon this assumption, to be analogous to that of *Beaumont vs. Fell,* and other similar cases.

But whatever may be said of the decision, it furnishes, in our opinion, no precedent for the doctrine now contended for. The parol evidence in that case, necessarily admitted to give application to the words of the will, showed conclusively that there was a literal mistake in giving Phillis twice when there was but one Phillis, and it was also conclusively shown that there was a Phillip not literally named. And the conclusion that he passed by the will was founded on these incontestible facts, and on other consid-

3. It may sometimes be admitted to give application to, the words of a will, but not to change the import of a devise.

MITCHELL.
vs.
WALKER.

erations deduced from the will itself. If the conclusion was right, it was certainly not founded upon the assumption that the testator was ignorant of any fact outside of the will, but upon the assumption that he was mistaken as to a word or name in the will, which was itself inferred from his assumed knowledge that he owned but one Phillis, and that he owned also one Phillip.

Here we are in effect called on to say, that upon vague and negative evidence the jury might have found that Stephen Walker did not know that land belonged to him which was obviously contained in the deed to him from the patentee owning it, and under which deed he and his brethren, beneficiaries with him, had acted, and taken possession of other parts of the tract; and that if they should so find, the consequence was that he did not intend to devise this land to his wife, and that it did not pass. We think none of the cases authorize such a conclusion from such premises.

There is upon this subject nothing certain nor even reasonably certain in this case but the words of the will, and the fact that Stephen Walker was the owner of this land, and of another tract on which was his mansion house; that this tract was never in his occupation, nor in the possession of any other person, prior to his death; and that he had done nothing to divest himself of his title. There does not appear to have been any real claim of ownership by any other person during his life, or that even yet there is any such claim, unless it be that of the defendant, who, having taken a recent possession of it, claims that it is included in a junior patent, which, by its calls, begins and ends in the same line of the elder patent, and lies not upon, but adjoining it, and which, therefore, cannot be made to interfere, but by proof that it was originally surveyed differently from its calls, and so as to cover a part of the patent called for.

Upon the authority of all the cases, we think the words "my land and mansion house" must have their plain legal sense and operation, and that by them all of the testator's land was included and devised to his wife, who, under the elder patent, is entitled to recover the land in contest, which, even if it were included in the junior patent, has not been held in continuous adverse possession for seven years.

The instruction that the possession of the defendant must, to prevent a recovery, have been peaceable and uninterrupted, &c. is, in the ordinary language, meaning that it must not have been forcible, and must have been continued. There is no presumption that the jury misunderstood it. And there being no evidence of a continued adverse possession for twenty, or even seven years, within the elder patent, the instruction, however understood, could not have been prejudicial to the defendant. The opinions of the court in giving and refusing other instructions were in conformity with the principles of this opinion. And the verdict is sustained by the evidence.

Wherefore, the judgment is affirmed.