HENDERSON AND
NASHVILLE R.
R. Co.
*vs.*
DICKERSON.

Case 22.

ORD. PET.

## Henderson and Nashville Railroad Company *vs.* Dickerson.

### APPEAL FROM TODD CIRCUIT.

17m 173
91   491

17bm 173
o114 853

17bm173
122   605

17bm173
f136   734

1. Retrospective legislation is not expressly prohibited by either the constitution of the United States or of Kentucky, unless it impairs the obligation of a contract. A statute giving the right of appeal in a civil case, where none existed before, is *not an ex post facto law.* (*Calder vs. Ball,* 3 *Dallas,* 386.)

2. Though the constitution secures the right of the citizen to a just compensation for his property before it shall be taken for public use, yet the legislature has the right to prescribe the mode in which that compensation shall be ascertained and determined.

3. The compensation which is to be paid to the owner of land taken for public use, is the actual value in money of the property taken from him; not to be diminished by any speculative advantage he may derive from its appropriation to the public use.

4. The value of the land proposed to be taken from the owner, considering its relative position to his other land, and the other circumstances which may diminish or enhance that value, are the proper considerations to be regarded in ascertaining that value.

5. So far as the 38th section of the act of 1851, (2 *vol. Ses. Acts,* 297,) conflicts with the constitution in that provision, which secures to the owner a just compensation for his property when taken for public use, it is wholly inoperative and void.

6 Where more is claimed by the owner than the value of his property, as consequential damages, the advantages to him may be taken into the estimate and set-off against such claim for consequential damages.

[The facts of the case are given in the opinion of the court.—REP.]

*J. M. Harlan* for appellants—

This case was before this court heretofore, on appeal by the same party, when it was dismissed because the appeal was not taken in time. Subsequently the legislature passed another act extending the time for appeals in such cases, (*Session Acts, page* 67, *of* 1855–6,) and the case has again been brought up. It is not deemed necessary to discuss the validity of this latter act. It interferes with no vested right of the appellee.

The commissioners appointed in the first instance, under the act of incorporation, made a report allowing to the appellee $650 for ten acres of land which it was proposed to take for the road. From this assessment the appellee appealed to the county court, with the view of presenting the question to a jury. A jury intervened and found for Dickerson $1,636, and the railroad company have appealed and seek a reversal of the case.

There was some conflict in the testimony of the witnesses, but the weight of testimony is clearly against the finding of the jury. But the main questions arise upon the instructions given and refused by the court.

The 38th section of the act of 1850–1, page 279, prescribes the mode of assessment in such cases. It is in these words : "The commissioners shall take into consideration the loss or damage which shall accrue to the owner or owners in consequence of the land or right of way being taken or surrendered, and also the benefit or advantage that the owner or owners may receive from the construction or establishment of the railroad, or any branch of it, or its works ; and shall particularly state the nature and value or amount of each, and the excess of loss or damage over and above the benefit or advantage to the owner or owners, shall form the measure of valuation of the said land or right of way." It is not denied that the owner of land taken for a public improvement is entitled to the actual value of the land taken ; but when he sets up a claim for consequential, ideal, or prospective damages, he must deduct therefrom the benefits and advantages which he derives from the public improvement. The county judge refused to conform to the statute, and hence a reversal is sought. (See *Sutton's heirs vs. City of Louisville,* 5 *Dana,* 33 ; *Rice vs. Turnpike Company,* 7 *Dana,* 87.)

The instruction of the court precluded the jury from taking into consideration any advantage the

appellee might derive from the establishment of the road, unless it might be some special advantage not enjoyed in common with others. To this the appellants object.

It is not insisted that in any state of case the whole value of the land taken can be absorbed by the advantages which may accrue to the owner, but if anything beyond the real value be claimed for consequential injury, then the advantages are to be estimated against such claim. This rule has not been pursued. .

A reversal is asked on these grounds: 1. The court refused the proper instructions when asked by the appellants. 2. Because improper instructions were given for appellee. 3. Because the assessment of the jury is excessive and not sustained by the proof. 4. Because the court excluded proper evidence offered by the appellants.

*R. M'Kee* for appellee—

This court properly dismissed the former appeal in this case because it was not authorized by the charter of the company. Since then the appellants have procured the passage of an act of the legislature of Kentucky, amendatory of their charter, whereby they may appeal as in other cases provided for in the Code of Practice. And they now seek to re-examine questions heretofore decided by this court, and to disturb rights acquired antecedent to the enactment of the amended charter. The right of appeal was fully discussed when this case was before the court heretofore, and the appeal dismissed. The question is *res adjudicata*, and need not be further argued. The rights of the parties have been fixed by the former adjudication. This right was a vested right, and could not be constitutionally enlarged or diminished by subsequent legislation; and consequently the act of 1855–6 is retrospective, and cannot change the rights of the parties.

HENDERSON AND
NASHVILLE R.
R. Co.
vs.
DICKERSON.

June 25.

Judge SIMPSON delivered the opinion of the court:

The appellee obtained a judgment against the appellants, for the injury he had sustained by the passage through his land of the railroad which they were constructing. The appellants being dissatisfied with the judgment he had recovered against them, brought the case to this court to reverse it. Their appeal was, however, dismissed upon the ground that it was not authorized by their charter. Afterwards, by an act of the legislature passed at the session 1855–6, (*Session Acts*, *p*. 67,) the act incorporating the Henderson and Nashville Railroad Company was amended, as follows:

"Where any assessment of damages for the right of way has been or shall hereafter be made, it shall be lawful for either of the parties, the person whose land has been condemned, or the said company, to prosecute an appeal to the court of appeals, at any time within three years from the time such assessment was made, for the correction of any errors that may have been made to the prejudice of the party appealing."

Since the passage of this amendatory act, the appellants have again brought the case to this court; and the counsel for the appellee contends that the amended act, so far as it is intended to operate retrospectively, is unconstitutional and void.

As a general principle, retrospective legislation is undoubtedly impolitic; but with the wisdom or policy of that part of the act under consideration which operates retrospectively, we have no concern. The question that we have to decide, is whether that part of the act violates any of the provisions of the constitution of this state, or of the United States.

Retrospective legislation is not expressly prohibited by any of the provisions contained in either of the constitutions. Where it affects or impairs the obligation of a contract, it is prohibited; but it does not have that effect in this case, because there was no contract existing between the parties. It is not an

1. Retrospective legislation is not expressly prohibited by either the constitution of the United States or of Kentucky,

*ex post facto* law, for such laws relate exclusively to offences against the public, and not to private wrongs and injuries. (*Calder vs. Bull*, 3 *Dallas*, 386.)

No constitutional provision has been designated as prohibiting this species of legislation. But it is said, that at the time of the passage of the amendatory act, the judgment appealed from was, by the laws then in force, final and conclusive, and that consequently the apellee had a vested right to the amount thereof, of which he has been deprived by the legislation in question, which must for that reason be deemed to be unconstitutional.

A vested right may be considered as the power to do certain actions, or to possess certain things lawfully. In its latter aspect, it is substantially a right of property, and as such is protected by those provisions in the constitution which apply to such rights. But a right to property is a perfect and exclusive right, and a right, therefore, to recover the amount of a judgment cannot be called a perfect or a vested right. (*Calder vs. Bull*, supra, page 394.) The appellee has a vested right in his land. This right he cannot be divested of under the constitution until just compensation has been made him for it. The judgment which he obtained did not divest him of his right to his property, nor did it enlarge his rights, nor invest him with any additional ones. He could not have a vested right to the land, and also to the amount of the judgment. A vested right to the latter, in the proper sense of the term, could not accrue until the money was collected. He has a constitutional right to have just compensation made him before he shall be deprived of his property; but the legislature has the power to prescribe the mode in which such compensation shall be ascertained and determined in a fair and just manner. The amendatory act under consideration did not violate nor impair any vested right, but only furnished to either party the same opportunity which other litigants had, to correct any errors that may have been com-

HENDERSON AND NASHVILLE R. R. Co.
*vs.*
DICKERSON.

unless it impairs the obligation of a contract. A statute giving the right of appealin a civil case, where none existed before, is *not an ex post facto law* (*Calder vs. Bull*, 3 *Dallas*, 386.)

2. Though the constitution secures the right of the citizen to a just compensation for his property before it shall be taken for public use, yet the legislature has the right to prescribe the mode in which that compensation shall be ascertained and determined.

HENDERSON AND
NASHVILLE R.
R. Co.
vs.
DICKERSON.

3. The com-
pensation which
is to be paid to
the owner of
land taken for
public use, is
the actual value
in money of the
property taken
from him; not
to be diminish-
ed by any spec-
ulative advan-
tage he may de-
rive from its ap-
propriation to
the public use.

mitted by the court below. We do not, therefore, regard the act as unconstitutional.

The constitution (*art.* 13, *sec.* 14,) declares that no man's property shall be taken or applied to public use, without just compensation being previously made to him. And according to the construction given to to this provision in the cases of *Sutton's heirs vs. The City of Louisville,* 5 *Dana,* 28, and *Rice et al. vs. The Danville, Lancaster, &c., T. R. Co.,* 7 *Dana,* 81, the compensation secured to the owner is the actual value in money of the property taken from him, which cannot be diminished by any speculative advantage he may derive from its appropriation to the public use.

But the principal question in this case is, how shall this value be estimated? The road which the appellants are constructing will pass through the farm of the appellee, in such a way as to separate his dwelling house, and a portion of his improvements, from the residue of his tract, and by running nearly parallel with another public road, will leave between the two roads a long narrow strip of land, upon which his dwelling house and part of his improvements are situated, whilst the balance of his improvements, and also of his tract of land, will be on the opposite side of the railroad. On the part of the railroad company, it is contended that the land thus taken for the use of the road, and being about ten acres, should be valued without any reference to its relative position to the balance of the tract, but according to its real and intrinsic worth, independent of its connection with the residue of the land. On the other side, it is contended that in estimating its value, its relative position to the balance of the tract, as well as to the improvements thereon, should be taken into consideration, and that no just or fair estimate of its value can be made upon any other principle.

4. The value
of the land pro-
posed to be ta-

The constitution secures to the owner of the land just compensation for his property, before he can be deprived of it. Its value to *him*, considering its re-

lative position to his other land, and the other circumstances which may diminish or enhance that value, can alone afford him a just compensation for its loss. To third persons, the same quantity of land, of equal quality, on one of the boundaries of the farm, might be of as much value as if it were situated in the middle of the farm, but at the same time its value, thus ascertained, might be a very inadequate compensation to the owner, if the land were taken out of the middle of his farm, so as to separate it into different parts, instead of being taken on one of its boundary lines. The real value of the land to the owner, as it is actually situated, and not merely its value regarding it as a separate and independent piece of land, he has a right to demand, and nothing less can secure him a just compensation for his property. In making such an estimate however, the inquiry should not be what price would induce him to sell the ten acres of land thus situated, because he might not be willing to sell it at any price, but the inquiry should rather be, what would be its value to him, situated as it is, if he were not the owner of it, but owned the adjacent property on both sides of it, under the same circumstances precisely that now exist. Its actual value to him in that condition would be as much as he has a right to demand, and would afford him that just compensation for his property secured to him by the constitution.

The 38th section of the act of the legislature, passed in 1851, (2d *vol. Session Acts*, 1850–1, *p.* 297,) under which the valuation in this case was made, provides that "the commissioners, in making the valuation, shall take into consideration the loss or damage which shall accrue to the owner or owners, in consequence of the land or right of way being taken or surrendered, and also the benefit or advantage that the owner or owners may receive from the construction or establishment of the railroad, or any branch of it, or its works; and shall particularly

ken from the owner, considering its relative position to his other land, and the other circumstances which may diminish or enhance that value, are the proper considerations to be regarded in ascertaining that value.

5. So far as the 38th section of the act of 1851, (2 *vol. Ses. Acts*, 297,) conflicts with the constitution in that provision, which secures to the owner a just compensation for his property when taken for public use, it is wholly inoperative and void.

·Henderson and
.Nashville R.
R. Co.
*vs.*
.Dickerson.

state the nature and value or amount of each; and the excess of the loss or damage, over and above the benefit and advantage to the owner or owners, shall form the measure of valuation of the said land or right of way."

But so far as the foregoing provision tends to defeat or render nugatory the clause in the constitution which secures to the owner a just compensation for any of his property that may be taken for public use, which compensation must be made in its actual value in money, and not in benefits and advantages which may be derived from the construction or establishment of the railroad, it is wholly inoperative, and must be disregarded.

6 Where more is claimed by the owner than the value of his property, as consequential damages, the advantages to him may be taken into the estimate and set-off against such claim for consequential damages.

If, however, the owner claims more than the value of the property taken, and seeks indemnity for consequential inconvenience or injury, then the advantages which result to him may be taken into consideration, and such advantages and disadvantages may be compared and set off, the one against the other; and if the advantages are equal to the disadvantages, then he will not be entitled to anything for such consequential inconvenience or injury.

In this case, however, the court instructed the jury who assessed the damages, that they were not to take into consideration, in estimating the consequential damages which the owner might sustain, any advantage that he might derive from the construction of the road, unless it were a special individual benefit, which was not common to others in the same neighborhood. In this exposition of the law, we think that the court erred.

The advantages which the owner may derive from the construction of the road, are not in the least diminished by the fact that they will be enjoyed by others, nor does it furnish any reason why they should be excluded from the estimate in comparing the advantages and disadvantages that will result to him from the establishment of the road. Other persons, it is true, may enjoy the same advantages,

without being subjected to the same inconvenience; but this results from the nature of the improvement itself, and does not in any degree detract from the value of these advantages to the owner of the land through which the road passes.

Wherefore, for the error of the court in giving the foregoing instruction, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.